Coulter v. Kaighn.

STEPHEN COULTER v. CHARLES KAIGHN AND JAMES M. COOPER.

Upon an application to cancel a judgment in this court, on the ground that certain bonds, to which the defendants alleged the judgment was collateral, had been paid and satisfied by the acceptance of other bonds of a like amount, the court will not interfere where it appears that the original bonds were collateral to the judgment, and that the new bonds were, by agreement, substitutions for those first given. By such agreement, the defendants are estopped from denying that the judgment was merely collateral.

This case came before the court on a motion to order satisfaction entered of a certain judgment confessed by the defendants to the plaintiff, on the 19th of May, 1858, for the sum of $19,996.58, which the defendants alleged was collateral security for the payment of certain bonds which had been given by the defendants to the plaintiff, and which bonds had been satisfied and paid.

The facts, as presented by the parties, are fully given in the opinion of the court.

For the motion, *P. L. Voorhees* and *A. Browning.*

VREDENBURGH, J.   The plaintiff, on the 19th May, 1858, entered up judgment in this court against the defendants for $19,996.58 by confession on bond and warrant of attorney. The defendants now move to enter satisfaction on the ground that the judgment has been paid. The bond on which the judgment was entered is dated on the 23d April, 1856. It appears, by the evidence, that at the date of the bond and warrant the plaintiff had judgment against the defendants and the South Camden Ferry Company for $9902.57.

The defendants were directors of the company, and applied to the plaintiff to cancel the last named judgment. The plaintiff agreed to it, provided the defendants would give him their individual bond and warrant of attorney to confess this judgment, being the one now in controversy, in lieu of their previous judgment, and also twenty-four bonds, of $500 each, secured by a mortgage on the property of the ferry company, known as the second mortgage. This was done.

These twenty-four bonds have since been taken up by the ferry company, and twenty-four other bonds, of $500 each, secured by a subsequent mortgage of the ferry company, accepted by the plaintiff in lieu of them, and the question is, if upon these facts we should order the judgment on the bond and warrant to be cancelled. The defendants contend that the ferry company was the principal debtor, and that the judgment bond was only given as collateral to the first named twenty-four bonds, and that these bonds, being paid and satisfied by the second named twenty-four bonds, the judgment bond was paid.

The plaintiff contends—first, that the second twenty-four bonds were substituted, by agreement, for the first named twenty-four bonds to accommodate the defendants, and that there was no payment; and, secondly, that even if there was no agreement to substitute the second twenty-four bonds for the first ones, yet that the first twenty-four bonds were col-

lateral to the judgment bond, and not the judgment bond collateral to the first twenty-four bonds.

Upon both or either of these questions I cannot see how there can be any doubt or hesitation, as both parties have furnished the evidence in writing.

The transaction, as it took place on the 6th June, 1861, when the first twenty-four bonds were surrendered, and the second set taken, was reduced to writing and signed by all the parties interested, by the defendants as well as by the plaintiff, and we have it here as Exhibit C on part of plaintiff.

This agreement, among other things, recites, that whereas the property of the South Camden Ferry Company is about to be sold, and whereas Stephen Coulter and others are the owners of all the bonds issued upon the second mortgage, the said Coulter being the holder of those held by him as *collateral security for a certain debt or debts;* and whereas the said Coulter and others are willing to offer to the owners of the third mortgage an opportunity to protect themselves, now therefore we do hereby covenant with the holders of the third mortgage, that they, the holders of the third mortgage, as our trustees, may bid to the amount of the second mortgage, and if struck off to them, shall pay us all interest on the second mortgage, and costs and fees, &c., and pay off the first mortgage, that then the sheriff may make the deed to them, provided they shall make bonds to the said Coulter and others for the principal amounts of the said second mortgage bonds, that is to the said Coulter for $12,000, and also execute a new mortgage to secure said last mentioned bonds. The defendants were by at this arrangement, and signed under this agreement their assent in writing, as follows: We, James M. Cooper, Charles Kaighn, Knight and James Tuthill, having an interest in the bonds held by Stephen Coulter as collateral, and the debts secured thereby, do consent to the above agreement. This agreement, on all sides, has been fully carried out. The sale went on under it, the third mortgagees purchased, paid the interest in arrears and expenses, the plaintiff surrendered up his first twenty-

four bonds and took the second twenty-four bonds secured by a new mortgage of the purchaser; and all this was done with the knowledge, consent, and co-operation of the defendants.

Now, even supposing that the judgment in controversy was only collateral to the first twenty-four bonds, yet the legal effect of this agreement was to substitute, by an agreement, the second twenty-four bonds in their place, and for which the collateral still remained a security by the agreement of the parties. The substitution was no payment of the first twenty-four bonds, nor of the indebtedness they were intended to secure. We can give no other legal effect to the agreement of the 6th June, 1861. The object of the defendants' agreement of the 6th June, 1861, could only be to negative the conclusion, that the substitution of the new bonds for the old ones should operate to discharge any collaterals. But again, if this is not the legal effect of the agreement of the 6th June, 1861, it is conclusive proof that the defendants are estopped from denying that the first twenty-four bonds were collateral to the judgment in controversy, and not the judgment to the bonds.

In the first place, the agreement of the 6th June expressly says that the twenty-four bonds are collateral security for the plaintiff's debt; and in the second place, their own written agreement, signed by them, says that the bonds are held by the plaintiff as collaterals, and they further say they are interested in these bonds. Now if the bonds were the principal debt, and the judgment in controversy only collateral, how were the defendants interested in the bonds? They could not be, for they must have belonged absolutely to the plaintiff. The defendants could only be interested in the bonds upon the supposition that they were collateral to the judgment now sought to be cancelled; and then they would be interested; for if the judgment should be cancelled from other sources, the bonds would revert again to them. It is not necessary to pursue the question further, for even if the judgment was collateral to the bonds, the defendants are estopped from denying it by their own admission in writing

to the contrary when the arrangement of the 6th June, 1861, was entered into, and their standing by and receiving the first twenty-four bonds cancelled under such their agreement. But even without this agreement of June 6th, 1861, it is apparent that the judgment was not collateral to the twenty-four bonds or to anything else.

The original loan to the ferry company was upon the credit of the defendants. It was on notes endorsed by them, and when the first twenty-four bonds were taken, judgment on their endorsed notes had been entered up against them, and at their request that judgment was cancelled upon their engagement to give this judgment bond, which was done accordingly, and also these twenty-four bonds given. Under these circumstances, the judgment bond was no more collateral to the twenty-four bonds than the twenty-four bonds were to the judgment. Both represented an original indebtedness, and although payment of one was payment of both, yet a mere change of security of either was no payment or satisfaction of the other. It is true the plaintiff, on entering judgment on his bond and warrant of attorney, swears that the judgment bond was collateral. But the defendants have also, in their written agreement, said the twenty-four bonds were collateral. Both sides intend to tell the facts truly, but both draw an erroneous conclusion of law from the same facts, perhaps each against himself.

The motion to enter satisfaction is denied with costs.